**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALYCE FRAHER,<br><br>                                Plaintiff,<br><br>v.<br><br>VERIZON WIRELESS SERVICES, LLC, a Delaware limited liability company, and DOES 1 through 10,<br><br>                              Defendants. | Case No.: 21-cv-00763-H-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; AND**<br><br>[Doc. No. 3.]<br><br>**(2) DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>[Doc. No. 5.] |

On April 21, 2021, Defendant Verizon Wireless Services, LLC ("Defendant") filed a motion to compel arbitration and stay the action. (Doc. No. 3.) On May 18, 2021, Plaintiff Alyce Fraher ("Plaintiff") filed a motion to remand the case to state court. (Doc. No. 5.) The parties filed their respective oppositions to each motion on June 7, 2021. (Doc. Nos. 9, 10.) The parties filed their replies on June 14, 2021. (Doc. Nos. 12, 13.) On June 17, 2021, the Court submitted both motions on the papers. (Doc. No. 16.) For the following reasons, the Court grants Defendant's motion to compel arbitration and denies Plaintiff's motion to remand.

**Background**

In March 2018, Plaintiff went to a local Best Buy to purchase one of Defendant's cell phones and its related services for her son. (Doc. No. 10-2, Fraher Decl. ¶¶ 2-4.) While there, a Best Buy employee reviewed the price of the phone and Defendant's terms of service with her. (Id. ¶ 5.) She ultimately decided to buy the phone and its services, and she signed an electronic signature pad to finalize the purchase. (See id. ¶¶ 5-9.) Plaintiff maintains that she was never aware of any arbitration agreement before signing the signature pad. (Id.) But according to Defendant, Plaintiff must have accepted its customer agreement to complete the transaction on the signature pad. (Doc. No. 12-1, Supp. Slade Decl. ¶ 3.)

Defendant produced a receipt for the transaction that contains Plaintiff's signature and states the following in bold: "**I agree to the VZW Customer Agreement (CA), including settlement of disputes by arbitration instead of jury trial, as well as the terms of the plan and optional services I have chosen. I am aware that I can view the CA anytime at verizonwireless.com.**" (Doc. No. 10-1, Henderson Decl., Ex. 2 (emphasis in original); Doc. No. 12-2, Kim Decl. Ex. A (emphasis in original);[1] see also Fraher Decl. ¶¶ 7, 9 (admitting she signed a signature pad and that the signature appears to be hers).) The referenced customer agreement expressly provides the following mandatory arbitration provisions:

**How do I resolve disputes with Verizon?**

**WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.**

**YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES**

---

[1] Plaintiff raised concerns that the receipt Defendant submitted in its original motion to compel was modified to include Plaintiff's signature on the second page, not the third page. (Doc. No. 10 at 8.) In reply, Plaintiff admits that this was a clerical mistake, and submitted a copy of the original document. (Doc. No. 12-2, Kim Decl. ¶ 3 & Ex. A.) The original document submitted by Defendant in its reply appears to be identical to the one Plaintiff submitted in her opposition. (Compare Doc. No. 10-1, Henderson Decl., Ex. 2, with Kim Decl., Ex. A.)

**ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

**(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").**

(Supp. Slade Decl. Ex. C at 6. (emphasis in original).)

Plaintiff alleges that she encountered various issues with Defendant's services. (Doc. No. 4 ¶¶ 14-21.) She also alleges that Defendant billed her for services that she either did not agree to pay for or did not receive. (Id. ¶¶ 22-29.) On March 13, 2021, Plaintiff filed a complaint in the San Diego County Superior Court, alleging claims against Defendant for (1) negligence, (2) violations of the California Consumer Credit Agency Reporting Act, and (3) violations of California's Unfair Competition Law. (Doc. No. 1-2.) On March 22, 2021, Plaintiff filed a first amended complaint, adding a state law claim under California's Consumer Legal Remedies Act and a federal claim under the Fair Credit Reporting Act (the "FCRA"). (Doc. No. 1-3.)

Because Plaintiff's first amended complaint added a federal claim, on April 19, 2021, Defendant timely removed the case. (Doc. No. 1.) Two days later, on April 21, 2021, Defendant filed a motion to compel Plaintiff to submit her claims to arbitration and stay the action. (Doc. No. 3.) On May 9, 2021, before responding to Defendant's motion,

Plaintiff filed a second amended complaint, dropping her lone federal claim. (Doc. No. 4.) On May 18, 2021, Plaintiff filed a motion to remand the case, asking the Court to decline to exercise jurisdiction over her remaining state law claims. (Doc. No. 5.)

## Discussion

### I. Motion to Compel Arbitration

#### A. Legal Standards

The Federal Arbitration Act (the "FAA")[2] permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011). Upon a showing that a party failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id. The party moving to compel arbitration carries the burden to show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). "While the Court may not review the merits of the underlying case in deciding a motion to compel arbitration, it may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal quotations, citations, and brackets omitted)).

---

[2] The parties agree that the FAA applies to this case. After all, the contract at issue, one for cell phone services between citizens of different states, clearly involves commerce, see 9 U.S.C. § 2 (covering all transactions "involving commerce"); Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 277 (1995) (reading "involving commerce" in § 2 of the FAA broadly to mean "affecting commerce").

## B. Whether a Valid Agreement to Arbitrate Exists

Fundamentally, "arbitration is a matter of contract." Rent-A-Center, West, Inc., v. Jackson, 561 U.S. 63, 67 (2010). Courts apply state contract law to determine whether a valid arbitration agreement exists, "while giving due regard to the federal policy in favor of arbitration." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) (international quotation marks and citations omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under California law, which applies here, the movant need only show the existence of a valid agreement to arbitrate by a preponderance of the evidence. Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Rosenthal v. Great W. Fin. Sec. Corp., 926 P.2d 1061 (Cal. 1996)). In so doing, "a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56." Lomeli v. Midland Funding, LLC, No. 19-CV-01141-LHK, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019) (citation omitted).

Here, Defendant argues that Plaintiff agreed to arbitrate her claims by signing an electronic sales receipt that expressly incorporated Defendant's customer agreement and, more specifically, its terms mandating arbitration. (Doc. No. 3 at 8-9; Doc. No. 12 at 8.) Under California law,

> [f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.

Shaw v. Regents of Univ. of California, 67 Cal. Rptr. 2d 850, 856 (Ct. App. 1997) (citation omitted). A contract need not expressly "recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document.'" Id. (brackets in original) (citation omitted).

The Court agrees with Defendant. Plaintiff claims that she was unaware of any agreement to arbitrate when she signed the signature pad to complete her purchase. (Doc. No. 10-2, Fraher Decl. ¶¶ 7-9.) But the receipt for the transaction submitted by Defendant,

which contains Plaintiff's electronic signature, unambiguously states that Plaintiff assented to Defendant's customer agreement and its terms requiring arbitration. (Doc. No. 12-2, Kim Decl., Ex. A.) Additionally, according to a declaration submitted by Defendant's senior analyst, who is familiar with how these sales receipts are created and kept, Plaintiff necessarily must have agreed to Defendant's customer agreement and its arbitration provisions to finalize her purchase on the electronic signature pad. (Doc. No. 12-1, Supp. Slade Decl. ¶¶ 2-3.) The receipt also makes it easy for Plaintiff to access the customer agreement by providing a hyperlink to Defendant website, where Plaintiff may view the agreement in its entirety. (Id.) In total, Defendant sufficiently demonstrates Plaintiff's assent to the arbitration terms contained in the customer agreement. See Shaw, 67 Cal. Rptr. 2d at 856; see also Lopez v. Terra's Kitchen, LLC, 331 F. Supp. 3d 1092, 1098 (S.D. Cal. 2018) (holding customer assented to terms of service when "provided with an opportunity to review the terms of service in the form of a hyperlink immediately under an 'I Accept' button" (citation omitted)). Plaintiff cannot now avoid the arbitration terms because she neglected to read them at the time. See Brookwood v. Bank of Am., 53 Cal. Rptr. 2d 515, 520 (Ct. App. 1996) ("Reasonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement.") Accordingly, Defendant meets its burden to show that an agreement to arbitrate exists by a preponderance of the evidence.

**C.     Whether the Arbitration Agreement Encompasses the Dispute at Issue**

The Court next determines "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Here, the agreement at issue broadly requires the arbitration of "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES" that Plaintiff received from Defendant. (Doc. No. 12-1, Supp. Slade Decl., Ex. C at 6. (emphasis in original).) Since all of Plaintiff's claims in this case relate to her purchase and use of Defendant's phone and related services, (Doc. No. 4 ¶¶ 35-63), they fall within the scope of the arbitration

agreement, see Poublon, 846 F.3d at 1259 (stating that arbitration clauses should be construed broadly in favor of arbitration). As a result, the Court must compel Plaintiff to submit her claims to arbitration pursuant to the parties' agreement. See KPMG, 565 U.S. at 21 (stating that a court must compel arbitration upon a showing that a party failed to comply with a valid arbitration agreement covering the dispute).[3]

### D. Whether to Dismiss or Stay the Case

Given that Plaintiff must submit her claims to arbitration, the Court must address whether to dismiss or stay the case. "[A] district court may either stay the action or dismiss it outright when . . . all of the claims raised in the action are subject to arbitration." Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1073-74 (9th Cir. 2014) (citing Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir.1988)); see also Thinket Ink Info. Res. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming dismissal under Rule 12(b)(6) when all claims were subject to arbitration). Each one of Plaintiff's claims are subject to arbitration. As a result, the Court, in its discretion, dismisses the action because no claims remain to be litigated in this Court.[4]

## II. Motion to Remand

The Court then turns to Plaintiff's motion to remand. On May 9, 2021, Plaintiff amended her complaint, omitting her federal claim. (Doc. No. 4.) Nevertheless, because Plaintiff's complaint included a federal claim at the time of removal, the Court has jurisdiction to adjudicate her remaining state law claims. See Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 349–51 (1988); Nishimoto v. Federman–Bachrach & Assocs., 903 F.2d 709, 715 (9th Cir. 1990). In such cases, a district court may, in its discretion, either retain or relinquish its jurisdiction over the remaining state law claims. Carnegie–Mellon Univ., 484 U.S. at 350-51, 357. In exercising its discretion, a district court should consider

---

[3] Plaintiff raised several objections to evidence submitted by Defendant in its motion to compel and corresponding reply. (Doc. No. 11 at 1-3; Doc. No. 14 at 1-3.) To the extent the Court considers any evidence objected to, Plaintiff's objections are overruled. Otherwise, the Court sustains Plaintiff's objections where valid and overrules them where invalid.

[4] The parties may move to re-open the case to confirm or vacate the arbitration award.

"the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." Id. at 357.

Under the circumstances, the Court elects to retain jurisdiction over the case. Declining to exercise jurisdiction would only delay the inevitable: that this case must be sent to arbitration. See Pak v. EoCell, Inc., No. 20-CV-05791-VC, 2020 WL 6318725, at *2 (N.D. Cal. Oct. 28, 2020). Both parties already completely briefed Defendant's motion to compel arbitration and share an interest its speedy resolution. Comity also does not favor remand because the FAA primarily governs Defendant's motion. See Ketroser v. UB SR LLC, No. 19-CV-05554-YGR-RMI, 2020 WL 4906068, at *3 (N.D. Cal. July 9, 2020), report and recommendation adopted, No. 19-CV-05554-YGR, 2020 WL 4904863 (N.D. Cal. Aug. 20, 2020). Finally, fairness also counsels toward exercising jurisdiction because Plaintiff decided to amend her complaint to include a federal claim after Defendant notified her of its intention to enforce the parties' arbitration agreement. (Compare Doc. No. 1-2, with Doc. No. 7-1, Uong Decl, Ex. A.) As a result, the Court, in its discretion, denies Plaintiff's motion to remand.

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration and denies Plaintiff's motion to remand. The Court orders Plaintiff to submit her claims to arbitration and dismisses the case. The Court directs the Clerk to close the case.

**IT IS SO ORDERED.**

DATED: June 21, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT